UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON LEE SUTTON,

          Plaintiff,

    v.

STATE OF WASHINGTON *et al.*,

          Defendants.

Case No.  C04-5642FDB

REPORT AND RECOMMENDATION

**NOTED FOR:
December 14, 2007**

      This Civil Rights action has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Plaintiff has been granted *in forma pauperis* status.  Before the court is defendant's motion for summary judgment (Dkt. # 104).  After review of the complaint, the motion for summary judgment, attached documents, the response, and the remainder of the file the court concludes the Defendant's motion should be **GRANTED IN PART AND DENIED IN PART AND THIS MATTER SHOULD BE SET FOR TRIAL.**

FACTS

      Mr. Sutton alleges his Eighth Amendment rights were violated when prison officials failed to protect him from sexual assault by another inmate.  He also alleges a Fourteenth Amendment due process violation (Dkt. # 10, amended complaint)[1].  While plaintiff uses the term, negligence, in his amended

---

[1] Plaintiff filed another amended complaint without leave of court, (Dkt # 17).  That document is not properly before the court and the operative complaint in this action is (Dkt. # 10).

complaint he does not bring any separate state claim (Dkt. # 10).  Plaintiff asks for the following relief:

    A.    He asks the court to find that the "physical negligent behavior of the defendants violated plaintiff's Eighth and Fourteenth Amendment rights under the U.S. Constitution."

    B.    He asks the court to rule the actions of inmate Muse were criminal and asks inmate Muse be charged.

    C.    He asks the court to find the defendants actions constitute deliberate indifference.

    D.    He asks for unspecified injunctive relief.

    E.    He asks for mental health care.

    F.    He asks the infraction be "discharged."

    G.    Plaintiff also asks for monetary damages.

(Dkt. # 10).

All defendants have been served with the exception of Defendant Muse.  The named defendants in this action are:

1. The State of Washington.
2. The Washington State Department of Corrections.
3. Defendant John or Jane Doe Gore food service sergeant.  Service accepted by Gary "Gort."
4. Darren Heaward, Custody Unit Supervisor, CUS.
5. Correctional Officer Hoare.
6. Bud Keller, Kitchen Supervisor.
7. Lieutenant Vern Long, Hearing Lieutenant.
8. Paul Martin, Mental Health Counselor.
9. A. Muse. This is the inmate who allegedly sexually assaulted the plaintiff
10. Joseph Nagy.
11. Hope Olson, Counselor.

The defendants set forth their version of the pertinent facts as follows:

On November 6, 2002, Jason Lee Sutton, the Plaintiff in this case, was assigned to work in the kitchen at the Clallam Bay Corrections Center (CBCC) per his request. Exhibit 2, Declaration of Hope Olson, ¶ 6. Shortly thereafter Mr. Sutton began requesting a new work assignment. Defendant Hope Olson, Mr. Sutton's classification counselor at the time, met with him several times regarding his behavior and programming issues. Id. Mr. Sutton and Defendant Olson also met regarding his request to be reassigned for a new work assignment, and Mr. Sutton informed Defendant Olson that he wanted to be reassigned because he had trouble getting up in the morning, did not like the type of work he was doing in the kitchen, and wanted a better job in the library or the music room. Id.

Defendant Olson consulted with Defendant Paul Martin, Mr. Sutton's psychologist at CBCC, regarding Mr. Sutton's problematic behavior. Id. ¶ 7. Defendant Martin had been counseling Mr. Sutton both individually and in group sessions for some time. Defendants Martin and Olson agreed that Mr. Sutton needed to develop a positive work program record that would allow him to receive regular inmate pay as Mr. Sutton had a propensity to develop relationships with older inmates, in which he received favors, such as store items, in exchange for sexual acts, per his own admission. Id. Due to this concern, Mr. Sutton agreed to complete 90 days programming in the kitchen, at which time he would be

REPORT AND RECOMMENDATION
Page - 2

considered for a work assignment change. Mr. Sutton also agreed to participate in
Stress/Anger Management in order to learn coping skills. Id.

In January 2003, Mr. Sutton notified Defendant Olson that he was being pressured for sex by another inmate in the kitchen. Defendant Olson immediately notified her supervisor, Defendant Darren Heaward. Id. ¶ 8. Defendants Heaward and Olson met with Mr. Sutton to discuss this issue the very same day. Defendant Heaward informed Mr. Sutton that he would need to provide more information before any action would be taken. Id. ¶ 9. Mr. Sutton was given several options by Defendant Heaward. He could identify the person allegedly threatening him in order to initiate an investigation and appropriate action, he could continue to work in his assigned job and report any immediate problems to custody staff or work supervisors, or he could refuse to report to his assigned work program. Id. Defendant Heaward also informed Mr. Sutton that he could be placed in the Intensive Management Unit for his protection if he felt unsafe. Id.

Mr. Sutton declined to identify the person who was allegedly threatening him and declined to go to the Intensive Management Unit. Id. ¶ 10. Instead he chose to go to work. Mr. Sutton was not ordered to go to work by either Defendant Olson or Defendant Heaward. Id.

On January 18, 2003, Mr. Sutton received a WAC 504 infraction for engaging in sexual acts with others with the exception of spouses during approved extended family visits. Exhibit 1, Declaration of Shaunna Carter, ¶ 6. Mr. Sutton was caught on videotape performing oral sex on another inmate in the CBCC kitchen restroom. It is undisputed that this incident occurred. Mr. Sutton's infraction hearing was held on January 23, 2003, and Mr. Sutton pleaded guilty to the infraction. Id. Mr. Sutton was sanctioned with six days disciplinary segregation with credit for time served. Mr. Sutton did not lose any good conduct time as a result of this infraction and did not appeal the decision of the hearing officer. Id.

(Dkt. # 104 , pages 2 to 4).

Mr. Sutton contests whether he was to program for 60 or 90 days in the kitchen before being allowed to ask for a different job (Dkt. # 105, page). He also contends he notified defendants several times he was being threatened by another inmate for sex and that defendant Olson did not notify her superior, Mr. Heaward, of the threats the same day (Dkt. # 105, page 7). Plaintiff admits he met with Defendants Heaward and Olson on January 17, 2003, and that Mr. Heaward demanded more information. Mr. Heaward demanded to know who was threatening plaintiff before starting an investigation (Dkt. # 105, page 7). Plaintiff contends he was placed in a position where he was being forced to either become an informant and provide information, which would place his life in danger, or continue working and be in danger of sexual assault.

The exhibits attached to plaintiff's responses provide additional relevant information (Dkt. # 105 and 106, exhibits). As early as July 30, 2002 Mr. Sutton's mental health counselor, Paul Martin, was aware Mr. Sutton was homosexual and had been preyed upon by other inmates in the past. (Dkt. # 105, Exhibit 8, session number 52 dated July 30, 2002). On November 13, 2002, Mr. Sutton requested a joint therapy session with his counselor, defendant Hope Olson, and his mental health counselor, defendant Paul

REPORT AND RECOMMENDATION
Page - 3

Martin. According to the session notes Mr. Sutton stated:

> "I asked you and Ms. Olson to meet with me because I want to change my pattern of living here. The way its been is, I do good for a while, and then I get into trouble. If I find somebody to love, then nothing else matters. I put them first. The rules don't matter than [sic]- I will break them to please my partner. I have a hard time telling the difference between fantasy and reality. Everyone at Clallam Bay knows I'm gay. It's harder for me to do time here now. I've been threatened by other inmates, and I've been teased and called bad names by both officers and inmates."

(Dkt. # 105, Exhibit 8, session number 55 dated November 13, 2002). In the objective portion of the session notes Mr. Martin states that one of Mr. Sutton's goals was to be in programs to help him stay out of trouble. All parties to the session agreed that Mr. Sutton needed a "structured environment."

Mr. Martin states:

> Ms. Olson and I discussed with Mr. Sutton the challenges he has as a young homosexual man serving time in prison. He claims that many inmates, both homosexual and bisexual, proposition him all the time. We talked about the need for him to work on gaining more impulse control, and just saying "No." We discussed a possible transfer to another facility where he is not as well-known. Ms. Olson noted that this was tried once before, in 1997, without success. I told him it would be best for him to work on obtaining celibacy here at CBCC.
>
> I suggested to Mr. Sutton that, when he finds himself falling "head-over-heels" in love with another inmate, he needs to send me a kite, and I will see him quickly.

(Dkt. # 105, Exhibit 8 session number 55).

In December 2002, during a mental health treatment session, Mr. Sutton alleged that Hispanic inmates in the Kitchen had been trying to have sex with him on the evening shift and that the kitchen supervisor, agreed to shift him from evening shift to morning shift to solve the problem (Dkt. # 106, Exhibit 9, session number 56, dated December 10, 2002). At that time he appeared to be in no specific danger and his mental health counselor Paul Martin "praised Mr. Sutton for solving this problem on his own." Id.

On January 16, 2003, Mr. Sutton sent an "Urgent Kite" to his counselor Hope Olson the contents of the kite reads:

> I need to be removed from my work program in Food-Service (Kitchen duty). I am being

> pressured to perform sexual act(s) on another inmate in the kitchen. I request a Private-meeting with you, in order to get away from the man who is doing this to me. Please help me, and please see me soon.

(Dkt. # 106, Exhibit 1).

Ms. Olson contends that when she received this kite she set up a meeting with Mr. Heaward, and Mr. Sutton the same day. It is uncontested the meeting was held on January 17, 2003. The parties contest whether the kite was received the same day it was written or the next day. Defendants set forth their interpretation of the meeting in their statement of the facts.

On January 18, 2003, Correctional Officer Nagy was working a control booth. Officer Nagy observed plaintiff on a security camera monitor screen. Plaintiff was performing fellatio on another inmate in the kitchen restroom area. Officer Nagy called Officer Hoare over to view his monitor and Officer Hoare also witnessed the incident. Shift and Kitchen staff were called and the inmates were taken to segregation. In his incident report Officer Hoare states his conclusion that the actions of inmates Sutton and Muse appeared to him to be consensual (Dkt. # 105, Exhibit 5). The reports do not state if the Shift and Kitchen staff were notified to break up the incident or to respond after it was over. Plaintiff received a major infraction for engaging in sexual acts with others in violation of Rule 504.

On January 23, 2003, plaintiff appeared at a disciplinary hearing chaired by defendant Long. Lieutenant Long insured plaintiff had 24 hours prior notice to the hearing and allowed plaintiff to enter a plea. Plaintiff pled guilty to the charge but also stated "I [sic] was not the first time and he and others has [sic] forced me to do this under threat. I told him no." When asked what the other inmate did to force him into this act plaintiff stated "[h]e threaten to beat me up." When asked how many times this had happened with inmate Muse plaintiff indicated "maybe three times." (Dkt. # 105, Exhibit 6). Lieutenant Long accepted the guilty plea and sentenced plaintiff to 6 days disciplinary segregation with credit for time served. No good time was taken and no appeal from the hearing was filed.

Defendants move for summary judgment and argue:

1. Plaintiff fails to state a claim.

2. Plaintiff's Fourteenth Amendment claim should be dismissed for failure to exhaust administrative remedies.

3. Failure to allege personal participation on the part of any defendant except Olson and Heaward.

REPORT AND RECOMMENDATION
Page - 5

1  4. Whether defendants are entitled to qualified immunity.

2  5. Whether state law claims should be dismissed.

3  6. The claims against the State and the Department of Corrections should be dismissed.

### STANDARD

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

### DISCUSSION

A. The State of Washington and the Department of Corrections.

Neither states nor state officials acting in their official capacities are persons for purposes of 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 48, 71 (1989). This rule applies equally to state agencies. See Kaimowitz v. Board of Trustees of the Univ. of Ill., 951 F.2d 765, 767 (7th Cir. 1991); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991). Because they are not persons within the meaning of § 1983, plaintiff has not stated a cause of action against the state or its agencies. See Seminole Tribe of Florida v. Florida 116 S.Ct. 1114, 1131 (1996); Natural Resources Defense Council v. California Dep't of Transportation, 96 F.3d 420, 421 (9th Cir. 1996). Eleventh Amendment immunity extends to state agencies. Pennhurst State Sch. & Hosp. v. Holdeman, 465 U.S. 89, 101-102(1984). Eleventh

1  Amendment immunity is not automatically waived in actions brought under 42 U.S.C. § 1983. Quern v.
2  Jordan, 440 U.S. 332 (1979). Washington has not waived the protection of the Eleventh Amendment.
3  Edgar v. State, 92 Wn.2d 217 (1979).

4      The State of Washington and the Department of Corrections are entitled to dismissal and their
5  motion for summary judgment should be **GRANTED.**

6      B.    Personal participation.

7      Defendant's argue all defendants except Olson and Heaward are entitled to dismissal for lack of
8  personal participation on the Eighth Amendment claim. A plaintiff must set forth the specific factual bases
9  upon which he claims each defendant is liable. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). A
10 defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or
11 position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978). A theory of
12 respondeat superior is not sufficient to state a claim under Section 1983. Padway v. Palches, 665 F.2d 965
13 (9th Cir. 1982).

14     Along with personal participation comes the concept of causation. The inquiry into causation must
15 be individualized and focus on the duties and responsibilities of each individual defendant whose acts and
16 omissions are alleged to have caused a constitutional violation. Leer v. Murphy, 844 F.2d 628, 633 (9th
17 Cir. 1988). At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly
18 authorized, approved, or knowingly acquiesced in the unconstitutional conduct. Bellamy v. Bradley, 729
19 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984).

20     1.    Gort and Keller.

21     Plaintiff has alleged no facts showing how defendants Gort or Keller personally participated in
22 failing to protect plaintiff on January 18, 2003. Both these defendants worked as supervisors in the
23 Kitchen. Plaintiff has not alleged that either defendant was aware of a threat to plaintiff while he was
24 working on the A.M. shift. The only evidence regarding kitchen staff is a mental health treatment session
25 where plaintiff alleges he complained that Hispanic inmates on the P.M. shift were pressuring him to
26 perform sexual acts with them. Plaintiff alleges an unnamed kitchen supervisor agreed to transfer plaintiff
27 to the A.M. shift  (Dkt. # 106, Exhibit 9, session number 56, dated December 10, 2002). Plaintiff has
28 failed to support any claim against these two defendants. Defendants Gort and Keller are entitled to

REPORT AND RECOMMENDATION
Page - 7

dismissal and their motion for summary judgment should be **GRANTED.**

   2.   Lieutenant Vern Long.

Vern Long is also entitled to dismissal with regard to the Eighth Amendment claim. There is nothing in the record to show that Lieutenant Long had any knowledge plaintiff was ever in danger. The only facts regarding this defendant center around a disciplinary hearing he chaired after the alleged assault. Defendant Long is entitled dismissal of all Eighth Amendment claims and his motion for summary judgment should be **GRANTED.** The court will examine the Fourteenth Amendment claims against this defendant separately.

   3.   Paul Martin.

Defendant Paul Martin is also entitled to dismissal for lack of personal participation. Here, the court focuses on his job duties and on what this defendant knew and when he learn certain information. Defendant Martin provides mental health treatment services to plaintiff. There is nothing in the record to show he plays any part in prison security. Further, there is nothing in the record to show he was ever made aware plaintiff was in danger in January of 2003. The record reflects this defendant being aware plaintiff was homosexual in prison and that plaintiff had problems being abused by inmates in the past. (Dkt. # 105, Exhibit 8, session number 52 dated July 30, 2002). Plaintiff does not show defendant Martin was made aware of any ongoing problem after plaintiff was moved from the P.M. kitchen shift (Dkt. # 106, Exhibit 9, session number 56, dated December 10, 2002). Defendant Martin is entitled to dismissal, and his motion for summary judgment should be **GRANTED.**

   4.   Correctional Officers Nagy and Hoare.

Correctional Officers Nagy and Hoare witnessed the alleged sexual assault on a security camera. The incident report written by Officer Hoare states:

> At approx 8:30 A.M. 1-18-03 CO Nagy called me to his post (C2U) from lower Control 2. He (Nagy) had me witness one of his monitors. I observed I/M Sutton (730954) perform fellatio upon I/M Muse (633115). Staff and Kitchen Officers notified. This appeared to be a consensual act on the part of both inmates.

(Dkt. # 105, Exhibit 5). The evidence shows these two officers being in a position to call for aid or an immediate response to the situation. While the incident report indicates other staff was notified it does not state when the other staff were notified or for what purpose the other staff were notified. These two defendants are not entitled to dismissal for lack of personal participation and their motion for summary

REPORT AND RECOMMENDATION
Page - 8

1  judgment on this issue should be **DENIED.**

2  The four remaining defendants in this action are defendants Olson, Heaward, Nagy and Hoare.

3      C.    <u>Failure to state a claim.</u>

4  Defendants argue plaintiff fails to state a claim (Dkt # 104, pages 6 to 10). To state a claim of cruel and unusual punishment plaintiff must satisfy two requirements: First, the deprivation alleged must be, objectively, "sufficiently serious." For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, (1994). Second, "[t]o violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind'. .. [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id</u>. at 834 (citations omitted). The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id</u>. at 837.

It is not contested that the day before plaintiff and inmate Muse were discovered in the Kitchen restroom, defendants Olson and Heaward met with the plaintiff regarding his allegations that he was being threatened for sex. Plaintiff refused to provide information so that an investigation could be started. He refused to name the person who was allegedly threatening him. As Mr. Sutton refused to identify a person, defendant Olson and Heaward gave him options: report to work and report any problems immediately, refuse a work assignment and be infracted. The parties contest whether Mr. Sutton would have been placed in protective custody without providing the name of who he alleged was pressuring him for sex. Mr. Sutton does indicate he wished to remain in general population.

    1.    <u>Objective requirement</u>.

Defendants argue Mr. Sutton is not able to show the conditions he was confined under posed a substantial threat of serious harm (Dkt # 104, page 8). Plaintiff was sent to work in the Kitchen after he complained that a person in the Kitchen was threatening him for sex. Prison Officials have a duty to protect inmates from rape or other criminal acitivy. The deprivation is sufficiently serious. <u>See Generally</u>, <u>Berg v. Kincheloe</u>, 794 F.2d, 457 (9th Cir. 1986).

    2.    <u>Subjective requirement</u>.

REPORT AND RECOMMENDATION
Page - 9

It is a question of fact whether defendants drew the inference that plaintiff was in danger. Defendants Olson and Heaward gave Mr. Sutton options on January 17, 2003.  The options were:

1    Provide the name of the inmate he claimed was threatening him so the situation could be further investigated.

2.    Go to works and report any problems to staff,

3.    Refuse his work assignment and be infracted.

4.    The parties disagree whether Mr. Sutton was offered a chance to check into protective custody without providing the name of the person he claimed was threatening him.

In Farmer v Brennan, the Supreme Court noted that whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to proof by inference, circumstantial evidence, or the fact that the risk was obvious.  Farmer v. Brennan, 511 U.S. 825, 842 (1994).  Defendants Olson and Heaward are not entitled to dismissal for failure to state a claim.

Further, on January 18, 2003, Correctional Officers Nagy and Hoare observed a prison security monitor which showed the plaintiff performing fellatio on another inmate in the kitchen restroom.  It is a question of fact whether they believed the plaintiffs actions were coerced or whether they believed plaintiff to be engaged in a voluntary act.  While the incident report authored by officer Hoare indicates kitchen staff and security were notified it does not say if they were notified during the incident or after the fact (Dkt. # 105, Exhibit 5).

Defendant's motion for summary judgment on this issue should be **DENIED.**

D.    Due Process.

With respect to a Due Process claim, plaintiff has not alleged facts sufficient to support a claim.  It is not clear from the complaint if plaintiff is bringing this claim in relation to the alleged sexual assault, or in the context of being found guilty of the major infraction (Dkt. # 10).

With regard to the major infraction, an inmate has no liberty interest arising under the due process clause in remaining in the general prison population or in remaining free from disciplinary segregation. Hewitt v. Helms, 459 U.S. 460, 467-468 (1983).  If a liberty interest in remaining free from segregation exists at all, it must be created by state law.  Washington state law does not create such an interest.  Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993).  State regulations do not afford a prisoner a protected

REPORT AND RECOMMENDATION
Page - 10

liberty interest entitling him to procedural protections unless the action by prison officials serves to increase his sentence or results in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 (1995). Plaintiff has not alleged facts that would establish that his placement in disciplinary segregation for six days resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life.

In Washington, there is not a liberty interest in avoiding segregation per se. Smith v Noonan, 992 F.2d 987 (9th Cir. 1993). Further, the liberty interest protecting the disciplinary hearing process applies to inmates who face loss of good time. A prisoner has no federal liberty interest in due process when the sanction imposed as a result of a disciplinary proceeding neither extends the length of the sentence nor is atypical and significant in relation to the ordinary incidents of prison life.

Even though Due process was not implicated by the sanction in this case, Lieutenant Long gave plaintiff 24 hours advanced notice of the hearing and a chance to present evidence of his innocense. Plaintiff pled guilty to the charge and did not file an appeal. Any claim of a denial of due process fails.

Plaintiff did not appeal the finding of guilt from his hearing or administratively exhaust any other Due Process claim. Defendants motion to dismiss Fourteenth Amendment claims should be **GRANTED.** Defendant Long is entitled to dismissal from this action.

E.  Qualified Immunity.

The doctrine of qualified immunity protects: "Government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Applying the standard is a two-part process. The first question is whether the law governing the official's conduct was clearly established. If the relevant law was not clearly established, the official is entitled to immunity from suit. Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997), cert. denied, 522 U.S. 852 (1997). If the law was clearly established, the next question is whether, under that law, a reasonable official could have believed their conduct lawful.

Berg v Kincheloe was decided over twenty years ago. Berg v. Kincheloe, 794 Fd.2d 457 (9th Cir. 1986). In that case the court held an inmate stated a claim for an Eighth Amendment violation where an

REPORT AND RECOMMENDATION
Page - 11

1 officer ordered an inmate to go work after being told the inmate was in danger if he reported to that
2 particular job assignment. The inmate was subsequently beaten and raped.

3 The Eighth Amendment standard is clearly established. Prison officials may not ignore conditions
4 that create substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, (1994). The question of
5 whether defendants could have believed their actions constitutional in this case involves a question of fact
6 regarding the subjective element of an Eighth Amendment. Defendants are not entitled to qualified
7 immunity. Defendants motion for summary judgment on this issue should be **DENIED.**

8     F.     Other Claims.

9 The parties contend there are supplemental state law claims. The operative complaint in this action
10 is the first amended complaint, (Dkt. # 10). Plaintiff improperly filed another amended complaint (Dkt #
11 17), that is not properly before the court. In 2005, the parties sought clarification as to which complaint
12 was the operative complaint. The court informed the parties which complaint was before it in 2005 (Dkt. #
13 60).

14 While plaintiff uses the terms negligent and negligence in the amended complaint the court does not
15 find the complaint to raise any state law claims.

16 CONCLUSION

17 The court should grant defendants motion for summary judgment in part and deny the motion in
18 part. The remaining defendants will then be Olson, Heaward, Nagy and Hoare. The only remaining claim
19 is the failure to protect Eighth Amendment claim. This case should be set for trial.

20 Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the
21 parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ.
22 P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v.
23 Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to
24 set the matter for consideration on **December 14, 2007**, as noted in the caption.

25

26 DATED this 20 day of November, 2007.

27

28                        /S/ *J. Kelley Arnold*
                       J. Kelley Arnold
                       United States Magistrate Judge