UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON LEE SUTTON,

    Plaintiff,

    v.

STATE OF WASHINGTON,

    Defendant.

Case No. C04-5642FDB

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART and GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## BACKGROUND

The undisputed record in this case reveals that Sutton is a homosexual prisoner who has problems coping with prison life. Session notes with his counsel reveal that he has a hard time controlling his impulses and that when he finds somebody to love, the rules do not matter. (Dkt. 105, Ex. 8.) Sutton also has problems in developing a positive work program that would allow him to receive regular inmate pay, which would allow him to forego developing sexual relationships with other inmates in exchange for favors.

On about November 6, 2002, working with prison officials, including defendant Counselor Hope Olson, he agreed to work in the kitchen for 90 days, following which, he would be considered for a work assignment change. Sutton also agreed to participate in stress/anger management in order

ORDER - 1

to learn coping skills. Sutton did not like working in the kitchen because he had trouble getting up in the morning, did not like the type of work he was doing in the kitchen, and wanted a better job in the library or the music room.

On January 16, 2003, Sutton notified Counselor Olson that he was being pressured for sex by another inmate in the kitchen. Sutton's "urgent kite" reads as follows:

> I need to be removed from my work program in Food-Service (Kitchen duty). I am being pressured to perform sexual act(s) on another inmate in the kitchen. I request a Private-meeting [sic] with you, in order to get away from the man who is doing this to me. Please help me, and please see me soon.

(Dkt. # 106, Ex. 1.) He met the same day with Counselor Olson and her supervisor Defendant Darren Heaward. Heaward and Olson tried to obtain more information from Sutton about who was pressuring him, and ultimately gave Sutton several options for dealing with the problem: (1) identify the person who was threatening him so that an investigation could be initiated, (2) continue working in the kitchen at his assigned job and report any immediate problems to custody staff or work supervisors, (3) refuse to report to his assigned work program (presumably, this would result in an infraction), or (4) be placed in the Intensive Management Unit for his protection if he felt unsafe (the parties disagree over whether protective custody was offered without having to divulge the name of the person threatening or pressuring him). Sutton declined to name the person pressuring him, and he went back to work in the kitchen. On January 18, 2003, on a prison security monitor, in a 21 second encounter, Sutton was observed performing oral sex on another inmate in the kitchen restroom. Sutton pleaded guilty at his infraction hearing on January 23, 2003, and was sanctioned with six days of disciplinary segregation. Sutton did not lose any good conduct time as a result of this infraction, and he did not appeal the hearing officer's decision.

## APPLICABLE LAW

***Summary Judgment Standard***: Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter

ORDER - 2

of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Sutton alleges cruel and unusual punishment under the Eighth Amendment. Inmates alleging Eighth Amendment violation must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wallis v. Baldwin*, 70 F.3d 1074, 76 (9th Cir. 1995). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. 511 U.S. at 838; 70 F.3d at 1077. "[D]eliberate indifference entails something more than mere negligence." *Rish v. Johnson*, 131 F.3d 1092, 1096, quoting *Farmer*, 511 U.S. at 835.

***Violation of Eighth Amendment, Cruel and Unusual Punishment***: To prove an Eighth Amendment violation, proof of both an objective and subjective component are required. First, the deprivation alleged must objectively be sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834. Second, the subjective component is that the prison official possesses a sufficiently culpable state of mind: "deliberate indifference to inmate health and safety." *Id.* at 834-36. If either of these components is not

ORDER - 3

1  established, a court need not inquire as to the existence of the other. *Helling v. McKinney*, 509 U.S.
2  25 (1993).

### DISCUSSION AND CONCLUSION

<u>Objective component</u>: "Only extreme deprivations are adequate to satisfy the objective component of any Eighth Amendment claim." *Rish v. Johnson* 131 F.3d 1092, 1096 (4th Cir. 1997). An inmate must establish that the risk or deprivation about which he complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly" to such a situation. *Helling v. McKinney*. 509 U.S. 25. 36 (1993). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A failure to protect claim requires that the Plaintiff demonstrate that conditions under which he was confined posed a substantial risk of serious harm. *Id.*

The circumstances in this case do not constitute an extreme deprivation nor do they demonstrate that conditions under which Sutton was confined posed a substantial risk of serious harm. The reason is that Defendants Sutton and Heaward were working with Sutton so that Sutton could learn to exercise will power and earn money within the prison system so that he would not have to do sexual favors in order to obtain items that he wanted. Various methods of dealing with his problems were advanced, such as working on impulse control and just saying "No," (even moving him to another institution, although this was tried once in 1997 without success), as well as stress and anger management, and getting employment for him within the prison. Sutton consulted with his psychologist at the prison, individually and in group sessions. As soon as Sutton alerted Defendant Olson, his counselor, that he was being pressured for sex by another inmate who worked in the kitchen, Olson and her supervisor, Defendant Heaward met with Sutton. Defendants were attempting to deal with an immediate problem against the background of problems that Sutton had in coping with his prison environment. It is unarguably appropriate for a prison official to inquire as to

ORDER - 4

who may be pressuring another inmate for sex or threatening an inmate, as prison officials are charged with maintaining the rules and keeping order.  On the other hand, it is inappropriate to place an inmate into protective custody, merely on the inmate's request, without having sufficient reason for doing so, particularly since Sutton did not provide any information about who was pressuring him or the nature of the risk that he faced.  The options presented to Sutton, objectively do not create conditions of confinement that constitute a substantial risk of serious harm or an extreme deprivation.

<u>Subjective component</u>:  Even if one concluded for the sake of argument that the circumstances did objectively constitute a substantial risk of serious harm, the circumstances do not satisfy the subjective test.  The subjective test requires that a prisoner show deliberate indifference on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)   In *Wilson*, the Supreme Court surveyed earlier decisions as it examined official conduct that does not purport to be a formally imposed penalty, and quoted *Whitely v. Albers*, 475 U.S. 312 (1986), adding emphasis:

> After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety ....  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Wilson*, 501 U.S. at 298-99.  "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle* [*v.Gamble,* 429 U.S. 97 (1976)]" *Id.* at 303.  Further elaborating upon the meaning of "deliberate indifference," the Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994):

ORDER - 5

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an <u>excessive risk to inmate health or safety</u>; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer*, 511 at 837 (emphasis added). The record does not show that Defendants Olson, Sutton's counselor, and Defendant Heaward, Olson's supervisor, had the required mental state. First, it is stretching it to conclude that the facts gave rise to an inference of substantial risk of serious harm – although Olson and Heaward were aware of the facts since they had been counseling Sutton and he advised them that he was being pressured for sex – this was against the background of Olson and the psychologist trying to help Sutton cope with his problems that give rise to his giving in to pressure for sex. Sutton's mental health counselor, Paul Martin, suggested that if Sutton found himself "falling 'head-over-heels' in love with another inmate, he needs to send me a kite, and I will see him quickly." (Dkt. # 105, Ex. 8, session number 55.) Sutton did send an "urgent kite" to his counselor, Defendant Olson. Olson and Heaward quickly met with Sutton to deal with the problem. However, Sutton would not cooperate in naming the person who was pressuring him, and, as a result, Olson and Heaward could not make a more specific assessment of the risk to Sutton and conclude that it presented excessive risk to Sutton. Accordingly, this is not the case where there is an "excessive risk to inmate health or safety" of which Olson and Heaward were aware or from which they could draw such an inference. Thus, there is no showing, nor could there be, that Defendants Olson and Heaward drew such an inference. They were engaged with Sutton and attempted to allow him to choose a course for dealing with the situation. While Sutton asserts that he was in an untenable position of having to make difficult choices, he did not help the situation by failing to provide more specific information to Defendants Olson and Heaward. Defendant Olson and Heaward neither knew of nor disregarded an excessive risk to Sutton's health or safety.

ORDER - 6

ACCORDINGLY, IT IS ORDERED:

1. Defendants' Motion for Summary Judgment is GRANTED, and the Court ADOPTS the Report and Recommendation as to the claims and defendants that the Magistrate Judge recommends for dismissal and DECLINES to adopt the Report and Recommendation as to Defendants Olson and Heaward;

2. Plaintiff's causes of action are DISMISSED against all defendants;

3. Copies of this Order shall be provided to Plaintiff, Defendants, and to the Hon. J. Kelley Arnold.

DATED this 13th day of March, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 7